IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br>1718 Connecticut Avenue, N.W., Suite 200<br>Washington, D.C. 20009,<br><br>     Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>Washington, D.C. 20528<br><br>     Defendant. | Civ. Action No. |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from the U.S. Department of Homeland Security ("DHS").

2. EPIC challenges the DHS's failure to make a timely decision on EPIC's request for communications between DHS and the Presidential Advisory Commission on Election Integrity ("Commission") concerning the transfer of personal data between the agency and the Commission, as well as the agency's failure to release any responsive records. EPIC seeks injunctive and other appropriate relief.

1

**Jurisdiction and Venue**

3. This Court has both subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(6)(E)(iii) and 552(a)(4)(B). This Court has personal jurisdiction over Defendant DHS.

4. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

5. Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C., established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government activities. EPIC's Advisory Board includes distinguished experts in law, technology, public policy, and cybersecurity. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

6. Defendant DHS is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1). Defendant DHS is headquartered in Washington, D.C.

**Facts**

7. Established by Executive Order 13,799 on May 11, 2017, the purpose of the Presidential Advisory Commission on Election Integrity was to "study the registration and voting processes used in the Federal Elections" and to issue a report to the President addressing three specific issues.[1] The Commission was created after President Trump's repeated assertions that roughly three to five million illegal votes were cast in the 2016 election.[2]

---

[1] Exec. Order No. 13,799, 82 Fed. Reg. 22389 (May 11, 2017).
[2] Michael D. Shear & Emmarie Huetteman, *Trump Repeats Lie About Popular Vote in Meeting with Lawmakers*, NEW YORK TIMES (Jan. 23, 2017), https://www.nytimes.com/2017/01/23/us/politics/donald-trump-congress-democrats.html.

8.    On June 28, 2017, the Vice Chair of the Commission attempted to collect detailed voter data from all fifty states and the District of Columbia. In letters to state officials, the Commission sought:

> [T]he full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information.[3]

Such a request has never been made by any federal official in the country's history. The Commission's demand for detailed voter records included directing state election officials to send voter records to an unsecured website[4] and proposing to publish partial social security numbers that would enable identity theft and fraud.[5]

9.    EPIC filed a lawsuit on July 3, 2017 for a temporary restraining order to halt the Commission's collection of state voter information.[6] On July 10, 2017, the Commission announced that it would suspend the collection of voter data pending the court's decision on EPIC's motion.[7] After the court's decision, Vice Chairman Kris Kobach attempted to renew the collection of state voter data.[8]

---

[3] *See, e.g.*, Letter from Kris Kobach, Vice Chair, Presidential Advisory Comm'n on Election Integrity, to Hon. Elaine Marshall, Sec'y of State, N.C. (June 28, 2017), https://www.documentcloud.org/documents/3881856-Correspondence-PEIC-Letter-to-North-Carolina.html.
[4] *See* Complaint at ¶21, *EPIC v. Presidential Advisory Commission on Election Integrity*, No. 1:17-cv-01320-CKK (D.D.C. July 3, 2017).
[5] The Commission letter sent to state officials warned that "any documents that [we]re submitted to the full Commission w[ould] also be made to the public." Letter from Kris Kobach to Elaine Marshall.
[6] *EPIC v. Presidential Advisory Commission on Election Integrity*, No. 1:17-cv-01320-CKK (D.D.C. July 3, 2017).
[7] Def. Suppl. Br. at ¶1(a), *EPIC v. Presidential Advisory Commission on Election Integrity*, No. 1:17-cv-01320-CKK (D.D.C. July 10, 2017).
[8] *See*, Letters from Kris Kobach, Vice Chair, Presidential Advisory Comm'n on Election Integrity, to Hon. John Merril, Sec'y of State, Ala et. al. (July 26, 2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/letter-vice-chair-kris-kobach-07262017.pdf.

10.     State voter data was not the only information the Commission sought. Former Vice Chairman Kobach said he would collect federal data from federal agencies, stating "You start where the evidence is . . . the federal government has that evidence," and that the "Commission will gather national level data and present it to the public."[9]

11.     On July 19, 2017, the Commission discussed the collection of data from federal agencies, including DHS.[10] Commission member Hans Anatol von Spakovsky described "other data that [he] think[s] we need to get" from federal databases.[11] Mr. Von Spakovsky then described a DHS database on immigration detentions:

> The databases at the Department of Homeland Security that have information on all non-citizens who legally are in the United States and information on all individuals who are illegally in the United States who have been detained and a record has been created.[12]

Mr. Von Spakovsky also described a DHS database for citizenship applications:

> There is also information in the Department of Homeland Security's files on individuals who apply for citizenship. One of the questions on the application form for naturalization is a question that specifically asks: have you registered or voted in elections? We need to know from DHS, and we need data on those files. How many files do they have of individuals, noncitizens, who answered yes to that question? What do they do with that information?[13]

12.     The sensitive data the Commission did seek was collected and used in an unsafe manner. The Commission employed insecure methods for receipt of personally identifiable information,[14] published individual e-mails to the Commission and personal information without warning.[15]

---

[9] *Kris Kobach talks his role on Trump's voter fraud commission*, FOX NEWS (May 12, 2017), http://video.foxnews.com/v/5431579603001/.
[10] Meeting Notice, 82 Fed. Reg. 31,063 (July 5, 2017).
[11] *Presidential Advisory Commission on Election Integrity, Mission, Procedures and Topics for Consideration*, C-SPAN (July 19, 2017), https://www.c-span.org/video/?431521-3/presidential-advisory-commission-election-integrity-mission-procedures-topics-consideration&start=1831.
[12] *Id*.
[13] *Id*.
[14] Lewis Decl. Ex. 11., *EPIC v. Presidential Advisory Commission On Election Integrity*, No. 17-1320 (D.D.C. July 3, 2017).

13.     In an Executive Order on January 3, 2018,[16] President Donald Trump terminated the Commission and instructed "the Department of Homeland Security to review its initial findings and determine next courses of action."[17]

14.     Immediately after the Commission's termination, former Vice Chairman Kobach announced that the data collection activity would shift to DHS, specifically the U.S. Immigration and Customs Enforcement ("ICE"). He also described efforts to match state voter rolls with federal databases of noncitizens.[18] Former Vice Chairman Kobach stated, "It's the right move…it's shifting in tactics from having the investigation be done by a federal commission to having it be done by [ICE]. The agency has a greater ability to move quickly to get the investigation done."[19]

15.     Tyler Houlton, a DHS spokesman, stated that DHS is taking over the panel "in support of state governments who are responsible for administering elections, with efforts focused on securing elections against those who seek to undermine the election system or its integrity."[20]

16.     Prior to the dissolution of the Commission, twenty states transmitted state data to the Commission.[21] Now, DHS has been tasked to pick up where the Commission left off which

---

[15] Christopher Ingraham, *White House releases sensitive personal information of voters worried about their sensitive personal information,* WASH. POST (July 14, 2017), https://www.washingtonpost.com/news/wonk/wp/2017/07/14/white-house-releases-sensitive-personal-information-of-voters-worried-about-their-sensitive-personal-information/.

[16] *Executive Order on the Termination of Presidential Advisory Commission on Election Integrity*, THE WHITE HOUSE (Jan. 3, 2018), https://www.whitehouse.gov/presidential-actions/executive-order-termination-presidential-advisory-commission-election-integrity/.

[17] Statement, The White House Press Secretary, Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity (Jan. 3, 2018), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/.

[18] Josh Gerstein & Matthew Nussbaum, *Trump Disbands Voter Fraud Commission: Kobach Says Homeland Security Immigration Officials Will Take Over Probe*, POLITICO (Jan. 3, 2018, 9:51 PM), https://www.politico.com/story/2018/01/03/trump-disbands-voter-fraud-commission-322621.

[19] *Id.*

[20] Celeste Katz, *Trump Voter Fraud Panel's Work May Continue in Secret, Watchdogs Fear*, NEWSWEEK (Jan. 4, 2018, 4:52 PM), http://www.newsweek.com/presidential-advisory-commission-election-integrity-voter-fraud-dhs-771258.

5

invariably could mean the handling of sensitive state voter information. No new information has been forthcoming from DHS or the Administration about the transfer of the voter data collected by the Commission to DHS.

17. On January 8, 2018, EPIC and ten civil rights and government oversight organizations sent a letter to Kristjen M. Nielson, Secretary of Homeland Security, seeking assurance that DHS will not accept or maintain any personal voter data obtained or created by the Commission.[22] The organizations stated that the Commission does not have authority to transfer personal data to the Commission.[23] The organizations further stated that the collection of personal data would trigger obligations under the E-Government Act of 2002, 44 U.S.C § 3501, the Privacy Act of 1974, 5 U.S.C. § 552a, and the Paperwork Reduction Act, 44 U.S.C. § 3507.[24]

18. The public has a right to know about any proposals to transfer personal data between the DHS and the Commission.

### EPIC's FOIA Request

19. On September 11, 2017, EPIC submitted a FOIA request ("EPIC's FOIA Request"), via e-mail, to DHS's Privacy Office.

20. EPIC's FOIA Request asked for the following agency records: "All communications between the Commission and/or its chair and the DHS concerning the transfer of personal data from the agency to the Commission."

21. In EPIC's FOIA Request, EPIC sought "News Media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

---

[21] Document Index at 8–9, *Lawyers' Comm. for Civil Rights Under Law*, No. 17-1354 (D.D.C. Sep. 29, 2017), ECF No. 33-3, https://epic.org/privacy/litigation/voter/epic-v-commission/Lawyers-Committee-v-Commission-document-index-092917.pdf.
[22] Letter from EPIC, et. al, to Kristjen M. Nielson, Secretary of Homeland Security (Jan. 8, 2018).
[23] *Id*.
[24] *Id*.

22. EPIC also sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

23. On October 2, 2017, DHS sent an acknowledgment letter indicating receipt of the request but stated that the request is "too broad in scope or did not specifically identify the records" which EPIC is seeking. DHS asked EPIC to "resubmit [EPIC's] request containing the names and/or offices within DHS [EPIC] would like searched as well as any search terms [EPIC] would like [DHS] to use." On the same day, EPIC sent a letter revising the request to include additional information to supplement the original information provided in EPIC's FOIA Request. EPIC's FOIA Request was assigned tracking number 2017-HQFO-01353.

24. EPIC's revised request narrowed the search to the following offices and search terms:

Offices:
- U.S. Citizenship and Immigration Services, Headquarters Office of Service Center Operations
- U.S. Immigration and Customs Enforcement, Headquarters

Search Terms:
- Kris Kobach
- Andrew Kossack
- ElectionIntegrityStaff@ovp.eop.gov
- Presidential Advisory Commission on Election Integrity
- Federal Data
- CrossCheck
- Registered to vote AND non-citizens
- Detained

25. On October 5, 2017, Ms. Angela Washington, FOIA Disclosure Director at the DHS Privacy Office, e-mailed EPIC to ask if, in addition to the search of the U.S. Citizenship and Immigration Services ("USCIS") and the U.S. Immigration and Customs Enforcement ("ICE"), EPIC would like a search conducted of the DHS Front Office. On the same day, EPIC

immediately confirmed that in addition to searches conducted of USCIS and ICE, EPIC wanted a search conducted of DHS Front Office for responsive records.

26. On October 5, 2017, EPIC received an acknowledgment letter from Ms. Washington by e-mail stating that DHS received EPIC's revised request. DHS granted EPIC's request for expedited processing and a conditional fee waiver based on a "sampling" of responsive documents to determine a fee waiver.

27. On October 6, 2017, EPIC contacted DHS by e-mail requesting the acknowledgment letter to be revised to reflect the established methodology for fee waiver determinations.[25]

28. On October 10, 2017, USCIS sent an acknowledgment letter by mail, signed by Ms. Jill A. Eggleston, USCIS FOIA Operations Director, confirming receipt of EPIC's FOIA request. The request was placed in the "complex track (Track 2)" and invoked a 10-day extension of its 20-day response time due to "unusual circumstances." USCIS did not include a decision concerning EPIC's request for a fee waiver or expedited processing. USCIS assigned EPIC's FOIA Request tracking number COW2017001221.

29. On January 5, 2018, Ms. LaEbony Livingston, FOIA analyst assigned to EPIC's FOIA request, e-mailed EPIC stating that potential records have been received and "will have to be reviewed for responsiveness" to EPIC's request. Ms. Livingston stated that she could not give an

---

[25] On August 18, 2016, EPIC filed an administrative appeal of the same fee response from DHS in a different FOIA matter (DHS FOIA Appeal 2017-HQAP-00181) and the appeal authority explained that DHS may not base its fee waiver determination on this "sampling" of responsive documents methodology. The appeal authority Heather L. McClintock of the U.S. Coast Guard office of Administrative Law Judge stated in a letter to EPIC:

> "Instead of basing the overall fee waiver determination on a sampling of documents, fees should be charged for only documents already in the public domain and/or containing mainly routine administrative information and waived for all other documents. I have instructed [DHS] accordingly."

adequate time estimate for completing the request. DHS's FOIA status tracker, as of January 5, 2018, states that an estimated delivery date is December 29, 2017.

### EPIC's Constructive Exhaustion of Administrative Remedies

30. Today is the 120th day since DHS received EPIC's FOIA Request.

31. Defendant DHS has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(A)(i).

32. EPIC has exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

33. Plaintiff asserts and incorporates by reference paragraphs 1–32.

34. Defendant DHS has failed to make determination regarding EPIC's FOIA request for 120 days and thus has violated the deadlines under 5 U.S.C. § 552(a)(6)(A)(i).

35. Plaintiff has constructively exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

36. Plaintiff asserts and incorporates by reference paragraphs 1–32.

37. Defendant DHS has wrongfully withheld agency records requested by Plaintiff.

38. Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

39. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

**Requested Relief**

WHEREFORE, Plaintiff requests that this Court:

A. Order Defendant to immediately conduct a reasonable search for all responsive records;

B. Order Defendant to take all reasonable steps to release nonexempt records;

C. Order Defendant to disclose to Plaintiff all responsive, non-exempt records;

D. Order Defendant to produce the records sought without the assessment of search fees;

E. Order Defendant to provide an affidavit detailing the agency's search methodology including search terms and the type of search performed, and confirming that all files likely to contain responsive materials were searched;

F. Order Defendant to produce a *Vaughn* Index identifying any records or portions of records withheld, if such records exist, stating the statutory exemption claimed and explaining how disclosure would damage the interests protected by the claimed exemption;

G. Order Defendant to grant EPIC's request for a fee waiver;

H. Award EPIC costs and reasonable attorney's fees incurred in this action; and

I. Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President and Executive Director

Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

/s/ Jeramie D. Scott
Jeramie D. Scott, D.C. Bar # 1025909
EPIC National Security Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: January 8, 2018